**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **LINDA ARMSTRONG,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:21-cv-02258-KHV-TJJ** |
| **ENNIS BUSINESS FORMS OF KANSAS, INC.,** | |
| **Defendant.** | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS

**COMES NOW** Plaintiff Linda Armstrong ("Ms. Armstrong" or "Plaintiff"), hereby offers her Memorandum in Support of her Motion to Compel Defendant to produce documents in response to Plaintiff's First Request for Production of Documents Nos. 28, 29, 31, 32, 33, 34, and 35.

## STATEMENT OF THE CASE

Ennis Business Forms of Kansas ("Ennis") has a printing facility in Fort Scott, Kansas. Linda Armstrong is a sixty-eight year old former employee of Ennis. In 1981, Ms. Armstrong was hired by Ennis to work in a low-level bindery position. Ms. Armstrong worked her way up to a press operator position and also performed custom bindery work. Ms. Armstrong's work performance over the course of her nearly thirty-nine year employment history with Ennis was good.

On or about April 13, 2020, Shelly Randall, HR Manager, and Gary Benham, Plant Manager, summoned Ms. Armstrong to the office. Ms. Randall told Ms. Armstrong that she was terminated due to the COVID-19 pandemic. Approximately twelve other employees from the Fort Scott facility were terminated with Ms. Armstrong. Two younger employees (with less

experience) assumed Ms. Armstrong's duties.  On or about May 28, 2020, Ennis began to rehire many of the terminated employees and called the younger employees back first.  On December 2, 2020, (after Ms. Armstrong filed a Charge against Ennis alleging age discrimination), Ms. Armstrong was offered a position at a lower rate of pay and with less responsibility.

On December 1, 2021, Ms. Randall and Mr. Benham were deposed.   During their depositions, they admitted that documents existed that were relevant to disputed issues in the case. Mr. Benham also testified that the reduction in force ("RIF") selection criteria was based on the various machinery employees could operate, but that there were no documents regarding the RIF selection process.   After the depositions concluded, Plaintiff served her Second Requests for Production of Documents.  In response, Defendant made meritless objections and failed to produce a single document (or even a privilege log).

## <u>DISCOVERY TIMELINE</u>

1.     On or about December 13, 2021, Plaintiff served her Second Requests for Production of Documents on Defendant.

2.     On or about January 12, 2022, Defendant served its objections and responses to Plaintiff's Second Requests for Production of Documents.  (See Defendant's Responses & Objections to Plaintiff's Second Requests for Production of Documents, attached as **Ex. A).**

3.     On or about January 14, 2022, Plaintiff sent Defendant a "Golden Rule" letter outlining the deficiencies in Defendant's discovery responses.  (See "Golden Rule" letter of January 14, 2022, attached as **Ex. B**).

4.     On or about January 21, 2022, Defendant's counsel sent a letter in response to Plaintiff's Golden Rule Letter. (See Defendant's Response to Plaintiff's Golden Rule Letter, attached as **Ex. C**).

5.      On or about January 25, 2022, Plaintiff's counsel and Defendant's counsel had a telephone conference regarding the issues raised in Plaintiff's "Golden Rule" letter.  Unfortunately, only one issue was resolved, and an impasse was reached regarding seven of the requests for production of documents.

6.      In accordance with Local Rule 37.2, Plaintiff has provided a Certificate of Compliance with Local Rule 37.2. (See Plaintiff's Certificate of Compliance, attached as **Ex. D**).

## DISCOVERY REQUESTS IN DISPUTE

The parties have reached an impasse regarding the following discovery requests:

**REQUEST FOR PRODUCTION NO. 28: All versions of any reduction in force policy(ies) implemented or utilized by You during any reduction in force at any point from Jan. 1, 2007, through present.**

Defendant responds that Request No. 28 is overly broad in temporal scope, unduly burdensome, and not proportional to the needs of the case.  Defendant also contends this Request is duplicative of Request No. 23, which sought all policies in existence during Ms. Armstrong's employment with Defendant.  Finally, Defendant states that no responsive documents exist.

"Discovery in discrimination cases should not be narrowly circumscribed."  See E.E.O.C. v. Kansas City Southern Ry., Case No. 33675756, 2000 WL 3367576, at *3 (D. Kan. Oct. 2, 2000). Relevancy is "broadly construed" and "a request for discovery should be considered relevant if 'there is any possibility that the information sought may be relevant to the subject matter to the action.'" Scott v. Leavenworth Unified Sch. Dist. 190 F.R.D. 583, 585 (D. Kan. 1999).  Discovery is relevant "unless it is clear that the information sought can have no possible bearing on the subject matter of the action." Snowden v. Connaught Lab., 137 F.R.D. 336, 341 (D. Kan. 1991). "Discovery of information both before and after the liability period . . . may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period." Kansas City Southern Ry., 2000 WL 3367576, at *3 (citing James v. Newspaper Agency v.

Standard Register Co., 591 F.2d 579 (10th Cir. 1979) (four years prior to liability period was reasonable); Raddatz v. Standard Register Co., 177 F.R.D. 446, 448 (D. Minn. 1997) (discovery period extended two years after employee terminated)).  "A request for discovery ... should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." Snowden v. Connaught Lab., 137 F.R.D. 336, 341 (D. Kan. 1991).

   "Conclusory or boilerplate objections that discovery request are irrelevant, immaterial, unduly burdensome, or overly broad" are looked on with disfavor in this District." AKH Co., Inc. v. Universal Underwriters Ins. Co., Case No. 13-2003, 2016 WL 6071796, at *3 (D. Kan. Oct. 17, 2016).  *See also* Mancia v. Mayflower Textile Services Co., 253 F.R.D. 354, 358-359 (D. Md. 2008) (as referenced in the Court's scheduling order and discussing improper use of boilerplate objections) (collecting cases). A party opposing a discovery request "has the burden to establish the lack of relevance by demonstrating that the requested discovery 'either does not come within the broad scope of relevance as defined . . . [under the Rule] or is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of the broad disclosure.'"  Etienne v. Wolverine Tube, Inc., 185 F.R.D. 653, 656 (D. Kan. 1999).

   In the present matter, Defendant contends that Request No. 28 is duplicative of Request No. 23.[1]  Defendant objected to Request No. 23, but then stated that no responsive documents exist.  During Ms. Randall's deposition, she admitted that there was a 2008-2009 RIF written policy. *See* **Ex. E**, Excerpt from Randall Deposition Transcript at 156:23-157:11; 160:23-161:13. Therefore, it is proper to serve a new discovery request that is narrowly tailored to capture the newly discovered RIF documents.

---

[1] Request No. 23 sought, "All documents containing your policies, manuals, guidelines, or procedures in existence at the time Ms. Armstrong was employed with Defendant regarding layoffs."

Defendant's other boilerplate objections do not have merit. *See e.g.*, <u>Mancia,</u> 253 F.R.D. at 358-359. Defendant claims Ms. Armstrong was terminated as a part of a RIF.  Ms. Armstrong's theory is that Defendant used the pandemic and corresponding reduction in force as an excuse to terminate older workers.  Ms. Randall testified there was no RIF policy in the current employee handbook; however, she admitted that that there was a 2008-2009 RIF policy that was implemented for a reduction in force. The 2008-2009 RIF policy is relevant because it would address RIF protocols and procedures. Whether or not Defendant followed the 2008-2009 RIF policy regarding the treatment of Ms. Armstrong is evidence of whether Ennis treated her unfairly. Ms. Randall testified that Defendant does not have any RIF policy in force now or at the time of the April 2020 termination; therefore, past policies are relevant and discoverable. Further, courts have found that the lack of policy documents can be indicative of pretext for unlawful discrimination. *See* <u>Moll v. Telesector Resources Group, Inc.,</u> 760 F.3d 198, 204 (2nd Cir. 2014) (stating that the defendant company's "failure to keep records of the reduction in force that resulted in Moll's termination may itself constitute evidence that the reduction in force was pretextual").

The Court's decision in *Moll* supports Plaintiff's position. 760 F.3d 198 (2nd Cir. 2014). In *Moll*, the appeals court held that the district court abused its discretion when it denied plaintiff's motion to compel discovery of reduction in force policies and documents. <u>Id.</u> at 204. The appellate court held that the current, previous, and future reduction in force documents were discoverable and relevant to the plaintiff's discrimination claim and went to the treatment of other similarly situated plaintiffs. <u>Id.</u> Here, Plaintiff seeks a prior version of a reduction in force, which, as the *Moll* Court held, is discoverable. Accordingly, the documents should be produced. *See also* <u>Rodger v. Electronic Data Systems, Corp.,</u> 155 F.R.D. 537, 540 (E.D. N.C. 1994) (compelling production of reduction in force policy in discrimination case); <u>Hollander v. Am. Cyanamid Co.,</u> 895 F.2d 80,

84 (2nd Cir. 1990) (holding that even if a discovery request "goes beyond the narrow confines of the [] facility in which [plaintiff] worked … [such discovery] is relevant" to a claim for discrimination); <u>Penk v. Oregon State Bd. of Higher Educ.</u>, 99 F.R.D. 506, 506-07 (D. Or. 1982) (allowing discovery of reduction in force policies, stating such policies are relevant to the plaintiff's discrimination case and "[d]iscovery should be liberal enough to allow plaintiffs to fully investigate … [and] RIF procedures may have the effect of discriminating…").

**REQUEST FOR PRODUCTION NO. 29:** All Documents and Communications providing the number of hours worked by employees for the following time period: March 1, 2019, through Jan. 2, 2021.

Defendant responds that this Request is duplicative of Request Nos. 15 and 16, which sought records documenting the number of hours employees worked from January 1, 2019 through December 31, 2019 and January 1, 2020 through December 31, 2020. Defendant also argues that Request No. 29 fails to comply with the "reasonable particularity" requirement, is vague and ambiguous, overly broad, irrelevant, and not proportional to the needs of the case. Finally, Defendant suggests the documents sought are protected from disclosure by the attorney-client privilege and or work product doctrine.

First, the fact that Request No. 29 may be duplicative of Requests Nos. 15[2] and 16[3] is insignificant because the documents were never produced.

Second, the reasonable particularity standard requires that discovery requests be "reasonably specific" so the responding party can identify what is wanted. See <u>General Elec. Capital Corp. v. Lear Corp.</u>, 215 F.R.D. 637, 641 (D. Kan. May 20, 2003) (party that did not articulate why the documents would be difficult to locate did meet its burden). In the present matter, it is fairly clear that Request No. 29 seeks timecards, schedules, timesheets, and communications about hours worked during a specific period. These are documents that a

---

[2] Request No. 15 sought, "All records documenting the number of hours employees worked from January 1, 2019 - December 31, 2019."

[3] Request No. 16 sought, "All records documenting the number of hours employees worked from January 1, 2020 – December 31, 2020.

manufacturer is required to maintain pursuant to the Fair Labor Standards Act. 29 C.F.R. § 516.2. Further, to the extent Defendant was truly confused at what this request sought, Defendant could have expressed its confusion at the meet and confer conference, which Defendant did not.

The party resisting a discovery request based on vagueness or ambiguities has the burden to show why and "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized . . . [in discovery requests]." Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 662 (D. Kan. Dec. 13, 2004). Here, Defendant has not met its burden that Request No. 29 is incapable of a response.

Regarding the overly broad objections, requests are "overly broad when they are couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within their scope." Swackhammer, 225 F.R.D. at 662. Again, it is fairly clear that time cards, schedules, timesheets and communications about hours worked during the relevant period would easily resolve this discovery request. Further, the sales information is not overbroad and is highly relevant to this litigation because Defendant claims the reason for its reduction in force was due to a decline in sales. Therefore, information about the Defendant's sales before, during, and after the termination is necessary to determine if Defendant's reason was pretextual, i.e., if sales did indeed decline or not thus providing support for a reduction in force. See e.g., Caviston v. Johnson Controls, Inc., Case No. 1:19-cv-01409, 2020 WL 3440565, at *5-6 (M.D. Penn. June 23, 2020) (in an age discrimination case with the implementation of a reduction in force, the court granted a motion to compel production of sales data for a fifteen-month period).

Finally, with respect to the privilege objections, the party withholding the document must "(i) expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing

information itself privileged or protected, will enable other parties to assess the claim."  Fed. R.

Civ. P. 26(b)(5)(A). Parties should produce a privilege log that contains information about: 1) the

document type; 2) the date the document was prepared; 3) the document's date (if different); 4)

the author; 5) the identity of the person for whom it was prepared; 6) the purpose of preparing the

document; 7) the number of pages; 8) the party's basis for withholding the document; and 8) any

other pertinent information necessary to establish the elements of each asserted privilege."

Kannady v. Ball, 292 F.R.D. 640, 645 (D. Kan. 2013).  Here, Defendant used conclusory privilege

objections and failed to produce a privilege log. Plaintiff has no way to evaluate the merits of the

alleged privilege claims.  Plaintiff has repeatedly requested that Defendant produce a privilege log,

but Defendant has consistently refused to do so.

**REQUEST FOR PRODUCTION NO. 31:** All signed statements procured by you or your
representatives relating to this case, including but not limited to, signed statements that resulted
during or after interviewing, meeting with, or otherwise talking to employees or former employees
about the 2020 reduction in force, sales decline due to the pandemic, this case, or Ms. Armstrong's
claims.

Defendant contends that the statements are protected by the attorney-client privilege or the
work product doctrine.  Defendant makes a conclusory allegation that the statements were taken
by defense counsel in preparation for trial.

Plaintiff is seeking the **signed** (and potentially notarized) witness statements. These

statements were taken of current and former hourly employees and allegedly relate to Plaintiff's

work performance and other issues potentially relevant to this litigation. Defendant refuses to

produce the statement(s) or provide a privilege log. Additionally, none of these individuals are

identified on the Rule 26 Disclosures.

Witness statements are not absolutely privileged.  See McCoo v. Denny's Inc, 192 F.R.D.

675, 683 (D. Kan. 2000) (witness statements were not protected and must be disclosed), Robinson

v. City of Arkansas City, Case No. 10-1431, 2012 WL 603576, at *12 (D. Kan. Feb. 24, 2012)

(witness statements taken by counsel were not absolutely privileged).  Defendant, as the party asserting work product protection, must establish each and every element of the work product claim by an evidentiary showing which is based on competent evidence.  See id.  Further, even if Defendant can meet this standard, Plaintiff can still obtain the statements pursuant to the necessity exception.  See id. at 684. This exception applies when a party can show a substantial need for the material and the other party cannot obtain the material without undue hardship.  See id.

Again, Defendant did not provide a privilege log nor were these individuals disclosed in Rule 26 Disclosures.  Plaintiff does not know the date of the statements or who provided the statements.  The date of the statement is necessary to determine whether or not litigation was "imminent." The identity of the individual who provided the statement is necessary to evaluate whether or not the necessity exception applies.  Defendant must produce a privilege log so that the alleged claims can be evaluated.  This failure to produce the statements or identify the witnesses thwarts Plaintiff's ability to interview or depose these individuals prior to the close of discovery.

**REQUEST FOR PRODUCTION NO. 32:** All text messages sent from or received by Gary Benham at any point from March 1, 2020, to present regarding alleged lost income, reduction in sales as a result of the pandemic, reduction in force, employee layoffs, employee terminations, employee suspensions, employee rehires, employee training or qualifications to work on multiple machines, or any of the claims in this lawsuit.

**REQUEST FOR PRODUCTION NO. 33:** All text messages sent from or received by Mike Allen at any point from March 1, 2020, to present regarding alleged lost income, reduction in sales as a result of the pandemic, reduction in force, employee layoffs, employee terminations, employee suspensions, employee rehires, employee training or qualifications to work on multiple machines, or any of the claims in this lawsuit.

**REQUEST FOR PRODUCTION NO. 34:** All text messages sent from or received by Shelli [Randall] regarding alleged lost income, reduction in sales as a result of the pandemic, reduction in force, employee layoffs, employee terminations, employee suspensions, employee rehires, employee training or qualifications to work on multiple machines, or any of the claims in this lawsuit.

Defendant's response is that Request Nos. 32-34 are unduly burdensome, not proportional to the needs of the case, seek irrelevant information, are not properly limited temporally and

substantively, and fail to comply with the reasonable particularity requirement. Defendant also claims these Requests are duplicative of Request No. 26.

First, Defendant's claim that these Requests are duplicative of Request No. 26[4] has no merit. Defendant unilaterally narrowed Request No. 26 to a two-month time period and then responded that no text messages exist.

Second, these Requests meet the specificity requirement because they are limited to text messages from three individuals who were involved in the alleged RIF process. Further, the Requests are properly limited substantively because the text messages are limited to RIF-related topics such as the pandemic; the purported lost sales and income; employee actions such as suspensions, layoffs, and terminations; the RIF selection criteria, the RIF process; and claims asserted in this lawsuit. Request Nos. 32 and 33 are properly limited temporally because the date range is from March 1, 2020 to the present. Request No. 34 is properly limited temporally by virtue of the fact that the text messages are confined to certain subjects i.e., the subject matter is RIF-related.

Finally, Ms. Randall testified that she has a cellphone provided by Defendant and sends work-related text messages on that phone. *See e.g.*, **Ex. E,** Randall Depo. Transcript at 36:1-3. Ms. Randall also testified that she has discussed Ms. Armstrong and this lawsuit in text messages on that phone. Id. at 36:11-20. Therefore, as text messages are relevant to Ms. Armstrong's age discrimination claim and there is testimony that communications concerning Ms. Armstrong and her case have been discussed in text messages, the text messages should be produced. *See* Walker v. Newman University, Inc., Case No. 2:19-cv-2005, 2020 WL 4698504, at *2 (D. Kan. Aug. 13,

---

[4] Request No. 26 sought, "All documents, including but not limited to, emails, text messages, electronically stored information (in their native format containing all metadata), or reports that were drafted, written, typed, created by or received by any current or former employee, manager, or supervisor of Defendant that mentions Plaintiff or her allegations of discrimination or harassment based on age and/or retaliation. This includes communications, emails, and/or documents received, reviewed, or drafted by human resources employees.

2020) (J. James) (compelling production of text messages); <u>Benney v. Midwest Health, Inc.,</u> Case No. 17-2548, 2018 WL 6042591, at *6 (D. Kan. Nov. 19, 2018) (compelling production of text messages between "Plaintiff and Defendant, its employees, attorneys, supervisors and/or agents" and stating any concern about confidentiality shall be alleviated based on the protective order); <u>Helget v. City of Hays, Kans.,</u> 300 F.R.D. 496, 501 (D. Kan. 2014) (finding that "logs or records pertaining to text messages about Plaintiff or Plaintiff's termination, created or maintained either by specified City personnel or wireless providers, have sufficient discovery relevance and could produce discoverable information … [t]ext message logs or records could provide Plaintiff with informant pertaining to her termination and the decision making process behind it …").

**REQUEST FOR PRODUCTION NO. 35:** All telephone records, including but not limited to office telephones, cellular phones provided or supplied by You, or any cellular phone used to contact employees, supervisors, or managers for the following individuals: Mike Allen, Shelli Randall, and Gary Benham, and for the following time period: March 1, 2020, through Jan. 1, 2021. The response to this request should also identify the specific phone number associated with each individual and whether that is an office telephone, a company provided cellular phone, or a personal cellular phone.

Defendant's response is that the Request does not meet the reasonable particularity requirement, seeks irrelevant information, is temporally and substantively overly broad, not proportional to the needs of the case, is vague, and amounts to an invasion of privacy.

Common sense dictates that a telephone record is nothing more than a telephone bill. Request No. 35 meets the particularity requirement because it is limited to telephone records for the three individuals who were a part of the alleged RIF process.  Telephone records are relevant and discoverable. See <u>Pipeline Productions, Inc. v. Madison Co.</u>, LLC, Case No. 15-4890, 2018 WL 4826205, at * 3 (D. Kan. Oct. 4, 2018) (phone records from non-party had to be produced).

Here, Request No. 35 is limited substantively to the three key players in the RIF process. The Request is limited temporally to the time when the pandemic began through the time period when all of the terminated employees were called back to work.  As such, the phone records are

discoverable. Both Ms. Randall and Mr. Benham testified they used their cell phones for work-related calls. *See e.g.*, **Ex. E,** Excerpts from Randall Depo. Transcript at 35:23-36:210; **Ex. F,** Excerpts from Gary Benham Depo. Transcript at 21:3-12. Further, Ms. Randall testified she made work-related calls about Ms. Armstrong and this lawsuit. *See e.g.*, **Ex. E,** Randall Depo. Transcript at 36:8-20. Ms. Randall and Mr. Benham also testified that they were participants in phone calls with Mr. Mike Allen (plant manager) discussing the reduction in force. *See e.g.*, **Ex. E,** Excerpts from Randall Depo. Transcript at 28:15-29:24; **Ex. F,** Excerpts from Benham Depo. Transcript at 36:5-37:4. Finally, any concern regarding confidentiality can be alleviated because the parties have agreed upon and the Court has entered a protective order in this case to maintain confidentiality.

## CONCLUSION

**WHEREFORE**, Defendant should be ordered to produce documents in response to Plaintiff's Second Requests for Production Nos. 28, 29, 31, 32, 33, 34 and 35. Defendant should also be required to produce a detailed privilege log for all documents being withheld or the statements and other documents should be barred from use in this litigation. Finally, Plaintiff seeks her attorney's fees related to the drafting of this motion and for such other and further relief as the Court deems just and proper.

Dated: February 4, 2022          Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

/s/ Michael A. Williams

**WILLIAMS DIRKS DAMERON LLC**
Michael A. Williams, KS Bar No. 19124
Courtney M. Stout, KS Bar No. 28447
1100 Main Street, Suite 2600
Kansas City, MO 64105
mwilliams@williamsdirks.com
(o) 816-945-7110
(f) 816-945-7118

**Attorneys for Plaintiff**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 4th day of February, 2022, the foregoing was filed with the Court's electronic CM/ECF system, which provided notice of the same to all counsel of record.

<u>/s/ Michael A. Williams</u>

Attorney for Plaintiff