IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LINDA ARMSTRONG,<br><br>                Plaintiff,<br><br>v.<br><br>ENNIS BUSINESS FORMS OF KANSAS, INC.,<br><br>                Defendant. | Case No. 2:21-cv-02258-KHV-TJJ |

**DEFENDANT ENNIS BUSINESS FORMS OF KANSAS, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

COMES NOW Defendant Ennis Business Forms of Kansas, Inc., by and through its attorneys, and for its Memorandum in Opposition to Plaintiff's Motion to Compel Defendant to Produce Documents ("Motion"), states as follows:

**STATEMENT OF THE CASE**

Plaintiff Linda Armstrong filed this age discrimination lawsuit following an unplanned layoff necessitated by a dramatic downturn in Defendant's business in the early days of the COVID-19 pandemic. Defendant is a small commercial printing company that has been doing business for decades in Fort Scott, Kansas. Defendant makes and imprints various business forms that it sells to wholesale distributors who serve various end-use customers. In a rapid and gut-wrenching turn of events in March and April of 2020, Defendant experienced a sudden business downturn as schools, private businesses, and government offices (end-use customers) precipitously closed in the early effort to "flatten the curve" of the emerging pandemic.

Mike Allen, Defendant's general manager, realized quickly that a reduction to Defendant's workforce would be required to survive what looked to be a stark decline in business of uncertain duration. With a workforce of just over 40 people in Fort Scott, Mr. Allen had to figure out how

to make cuts while also preserving sufficient personnel to perform all the essential functions of the business. Hence, Mr. Allen determined the most versatile print operators who could operate the widest variety of equipment made the most sense since they could perform all the essential functions of each press and machine. Unfortunately, the least versatile employees with the fewest skills in demand were the most vulnerable. Despite 39 years of employment with Defendant, Plaintiff was still relatively unskilled in that she worked in the bindery department (a low level and non-press operator position) and also operated on a part-time basis the plant's simplest printing machines called register presses or register machines. As Plaintiff herself acknowledged in her deposition, age was not a factor in this emergency layoff, and she did not believe she was discriminated against when she was laid off. (*See* Plaintiff's Dep., attached hereto as Ex. 1 at 93:2-6).

Just as with the layoff, callbacks were based on skill sets and what equipment was most needed to meet demand as businesses started to re-open. Approximately seven months after Plaintiff was laid off, there was an opening in the bindery where Plaintiff had worked part of the time. An offer to return Plaintiff to full-time employment was made but rejected by Plaintiff. In her deposition, Plaintiff admitted that she considers herself retired. (*See* Ex. 1 at 138:20-139:7).

## DISCOVERY TIMELINE

A historical look at Plaintiff's opening discovery is important as many of the requests at issue here are repetitive and duplicative of earlier requests. Plaintiff propounded her First Requests for Production of Documents and First Set of Opening Interrogatories on August 18, 2021, and Defendant served its responses and objections to the same on October 8, 2021. In response, Plaintiff's counsel sent defense counsel a golden rule letter on November 1, 2021, outlining various alleged deficiencies and requesting a privilege log. (*See* Letter dated November 1, 2021, attached

hereto as Ex. 2). On November 4, 2021, defense counsel responded to the letter. (*See* Letter dated November 4, 2021, attached as Ex 3). The parties' counsel thereafter conferred on November 5, 2021, and they specifically agreed that a privilege log was not necessary regarding privileged information from defense counsel's files relating to the defense of this litigation. Defendant objected to several requests in the opening discovery as seeking information protected by both the attorney client privilege and the work product doctrine. Plaintiff did not file a motion to compel a privilege log thereby conceding the agreement that no privilege log was required for privileged information from defense counsel's files.

On December 13, 2021, Plaintiff propounded her Second Requests for Production of Documents on Defendant with several of the requests being repetitive and duplicative of the earlier discovery requests, overly broad in scope, disproportional to the needs of the case, and not relevant for purposes of this litigation. Following the parties' failed mediation on January 5, 2022, Plaintiff's counsel again inquired about a privilege log via e-mail on January 7, 2022, to which defense counsel replied, "As to the privilege log, in our meet and confer, [Plaintiff's counsel] agreed we did not need to produce a log." In response, Plaintiff's counsel stated, "There is no need for a privilege log for your communications with your client that fall under the attorney/client privilege. The rules/ case law governs everything else, and if you are withholding documents (which would include signed witness statements), they must be on a privilege log and/or produced." (*See* E-mail Exchanges attached here to as Ex. 4).

On January 12, 2022, Defendant served its responses to Plaintiff's Second Requests, and on January 14, 2022, Plaintiff's counsel sent a golden rule letter regarding the alleged deficiencies. (*See* Letter dated January 14, 2022, attached hereto as Ex. 5). Defense counsel responded on January 21, 2022, and the parties thereafter conferred on January 23, 2022, and were unable to

3

resolve their differences.  (*See* Letter dated January 21, 2022, attached hereto as Ex. 6).  Plaintiff subsequently filed her Motion, and as discussed below, this Court should sustain Defendant's objections and deny Plaintiff's Motion.

## **LEGAL STANDARDS FOR DISCOVERY AND MOTIONS TO COMPEL**

The scope and limits on discovery are generally governed by Fed.R.Civ.P. 26(b)(1) which provides: "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See Holick v. Burkhart*, No. 16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).  Thus, the two critical points for determining whether discovery is permissible are: (1) whether it seeks information "relevant to any party's claim or defense" and (2) whether it is "proportional to the needs of the case."

The mere filing of a lawsuit does not automatically permit or allow a plaintiff to engage in a fishing expedition and "roam in the shadows of relevancy" to explore matters not germane to the theories in the case, in the hope that they might become so.  *See Prokosch v. Catalina Lighting, Inc*., 193 F.R.D. 663, 638 (D. Minn. 2000). Relevant information is any matter that bears on, or that could lead to other matter that would bear on any party's claims or defenses. *Kimberly Young v. Physician Office Partners, Inc.*, No. 18-2481-KHV-TJJ, 2019 WL 4256365, at *1 (D. Kan. Sept. 9, 2019).  If discovery requests appear facially objectionable in that they are overly broad or seek information that does not appear relevant, the burden is on the movant to demonstrate how the requests are not objectionable.  *Linnebur v United Tel. Ass'n*, No. 10-1379-RDR, 2011 WL

4

5103300 at *2 (D. Kan. Oct. 27, 2011).  There is no presumption in the Federal Rules of Civil Procedure that a discovery request is relevant.  *Id*.

Likewise, in resolving discovery disputes, courts should measure proportionality.  *Ad Astra Recovery Servs., Inc. v. Heath, Esq.*, No. 18-1145-JWB-ADM, 2019 WL 4466903 at * 3 (D. Kan. Sept. 18, 2019).  And when evaluating proportionality, courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

In the instant case, Plaintiff cannot satisfy either of these criteria in connection with the objected to discovery; consequently, her Motion should be denied.

## DISCOVERY AT ISSUE

**REQUEST FOR PRODUCTION NO. 28**: All versions of any reduction in force policy(ies) implemented or utilized by You during any reduction in force at any point from Jan. 1, 2007, through present.

**DEFENDANT'S RESPONSE**:  Defendant objects to this Request because it is overly broad in temporal scope and is not proportional to the needs of the case. Plaintiff's request for "all" versions and policies that exist over a period of 13 years is overly broad and unduly burdensome and seeks documents irrelevant to the issues in this case. Defendant further objects to this Request as repetitive and duplicative of Plaintiff's Request No. 23.  Subject to and without waiving these objections, Plaintiff was laid off on April 13, 2020, and as previously disclosed, Defendant has no responsive documents as it pertains to the Fort Scott plant at that time.

**ARGUMENT:** Plaintiff's Complaint and Motion make clear that Plaintiff was laid off on April 13, 2020.  This Request is facially overbroad and irrelevant in seeking "all" versions of any reduction in force policy from 2007 to present.  The only year at issue is 2020. As Shelli Randall, Human Resources Manager, testified at her deposition, there was no reduction in force policy in effect in 2020 at the Fort Scott plant.  (*See* S. Randall Dep., attached hereto as Ex. 7 at 14:13-16, 156:23-157:2).  Defendant has produced its employee handbook in effect in 2020 (D701 to D733). That handbook is dated April 2014, and it contains language that affirmatively states that it

5

supersedes all prior personnel manuals, policies and procedures and handbooks governing employment at Defendant. Contrary to Plaintiff's position, outdated and superseded policies in existence over 13 years ago which were not consulted or used in the 2020 unplanned layoff are irrelevant to the claims in this lawsuit.

Further, this Request is duplicative of Plaintiff's Request No. 23, which was part of Plaintiff's First Requests for Production, and which sought all documents containing Defendant's policies regarding layoffs. Defendant objected to Request No. 23 as overly broad, irrelevant and not proportional to the needs of the case and limited its response to the applicable year, 2020. In response, Defendant stated that no responsive documents existed as it related to the Fort Scott plant. Plaintiff did not address those objections in her golden rule letter; consequently, Defendant's objections and response were accepted. (*See* Ex. 2).

Fed.R.Civ.P. 26(b)(2)(C)(i) provides that the court must limit the frequency and or extent of discovery if it determines that the discovery sought is unreasonably cumulative or duplicative. Here, Plaintiff's Request No. 28 is duplicative of Request No. 23. Furthermore, Plaintiff fails to establish how a policy that was superseded 13 years ago and was not used or referenced in the 2020 unplanned layoff is relevant or proportional to any claim in this lawsuit especially since Plaintiff admitted that her age was not a factor in the layoff. (*See* Ex. 1 at 93:2-6).

Notwithstanding the above, Plaintiff's Request No. 21, which was part of Plaintiff's First Requests for Production of Documents, requested all handbooks in existence during Plaintiff's 39-year tenure. Following discussions between counsel, Plaintiff's counsel agreed to limit the request to handbooks in effect from 2015 to present. (*See* Ex. 2 at Request No. 21). In response, Defendant complied and produced the handbook dated April 2014. As such, the parties have already agreed to a time limitation of five years, and Defendant has already produced the handbook that has been

in effect since April 2014.

In support of her Motion, Plaintiff cites various cases from other circuits to support her position of production. Plaintiff's reliance on several out of state opinions is misplaced as none of the referenced cases required production of a superseded and outdated policy. The facts, legal issues, and the discovery at issue in those cases are factually and legally distinct from those at issue in this case. Specifically, in *Moll v. Telescetor Resources Group, Inc*., 760 F.3d 198 (2nd Cir. 2014), the plaintiff was selected for a reduction in force because of her performance. The plaintiff claimed she was never presented with documents relating to her performance. Plaintiff requested documents relating to similarly situated employees selected for a reduction in force in the prior three years. In *Rodger v. Electronic Data Systems, Corp.*, 155 F.R.D. 537 (E.D. N.C. 1994), the court concluded that discovery should be "reasonably related to the circumstances involved in the alleged discrimination and to a time frame involving the alleged discriminatory conduct and the individuals who are allegedly involved in that conduct." *Id*. at 540. The *Rodger* Court limited the discovery requested to similarly situated individuals and to a time period of three years. *Id*. In *Hollander v. American Cyanamid Co.*, 895 F.2d 80 (2nd Cir. 1990), the discovery at issue sought the identity of each management level employee terminated over the age of 40. The case did not involve a request for obsolete and inapplicable reduction in force policies. Last, in *Penk v Oregon State Bd. of Higher Educ*., 99 F.R.D. 506 (D. Or. 1982), Plaintiff was not terminated pursuant to a reduction in force but sought reduction in force policies to determine if the defendant's policies effectively discriminated against women. As such, none of these cases indicate that outdated and superseded policies are relevant to a reduction in force process taking place some 13 years after the policy was no longer referenced or used. Accordingly, Defendant's objections should be sustained.

7

**REQUEST FOR PRODUCTION NO. 29**: All Documents and Communications providing the number of hours worked by employees for the following time period: March 1, 2019, through Jan. 2, 2021.

**DEFENDANT'S RESPONSE:** Defendant objects to this Request as repetitive and duplicative of Plaintiff's Request Nos. 15 and 16. Defendant further objects to this Request as it fails to comply with the "reasonable particularity" requirements of Fed. R. Civ. P. 34(b)(1). Defendant further objects to the Request because it is vague and ambiguous, overly broad, irrelevant, and not proportional to the needs of this case. Defendant further objects to this Request to the extent it may be interpreted as calling for information protected from disclosure by the attorney-client privilege or work product doctrine.

**ARGUMENT:** Plaintiff concedes in her Motion that Request No. 29 is repetitive and duplicative of Request Nos. 15 and 16, which were part of Plaintiff's First Requests for Production of Documents, and which sought all records documenting the hours employees worked from January 1, 2019, through December 31, 2020. Defendant asserted objections to Requests Nos. 15 and 16, and pursuant to communications and discussions between counsel, Defendant did not produce the requested records. (*See* Ex. 2 and Ex. 3). Plaintiff did not file a motion to compel those records or to contest Defendant's objections, and thus, Defendant's objections remain.

Further, as acknowledged by Plaintiff, Defendant's reason for the reduction in force was due to a *decline in sales*, and she argues that information relating to *Defendant's sales data should be discovered*. (*See* Motion at pg. 7). But Request No. 29 does not seek documents relating to Defendant's sales. Rather, it seeks employee hours, a wholly different and irrelevant topic. Defendant has already provided to Plaintiff the financial information exhibiting its significant sales decline in March and April 2020. In addition, employee hours were not a factor in the selection criteria for layoffs in Plaintiff's business unit, rather, the ability of the employee to operate multiple machines was the selection criteria. Thus, the requested documents are irrelevant to any claim in this lawsuit.

Finally, Request No. 29 is facially overbroad and not proportional to the needs of the case. The unplanned layoff took place in April 2020, not in 2019 or after April 2020. In addition, this

8

Request is not limited to the Fort Scott plant or to employees similarly situated to Plaintiff. It is also irrelevant on its face as Plaintiff admits the layoff occurred due to the economic impact of COVID-19. Here, Defendant has stated its legitimate nondiscriminatory business reason for the emergency layoff and has never contended the layoffs had to do with employee hours. Further, this Request is so broad and undefined in that it requests "all" documents and communications, which would potentially entail all emails, notes, personnel files, payroll, vacation and leave requests of non-party employees. To search every employee file and all communications with employees regarding their hours worked is clearly onerous. As such, Defendant's objections should be sustained.

**REQUEST FOR PRODUCTION NO. 31**: All signed statements procured by you or your representatives relating to this case, including but not limited to, signed statements that resulted during or after interviewing, meeting with, or otherwise talking to employees or former employees about the 2020 reduction in force, sales decline due to the pandemic, this case, or Ms. Armstrong's claims.

**RESPONSE**: Defendant objects to this Request to the extent it may be interpreted as calling for information protected from disclosure by the attorney-client privilege or work product doctrine. Specifically, any signed statements taken by Defendant's counsel during this litigation were taken in order to prepare for trial and disclosure of such statements would improperly reveal counsels' mental impressions and strategies. Subject to and without waiving this objection, Defendant does not have any non-privileged responsive documents.

**ARGUMENT:** Plaintiff's demand for witness statements taken by defense counsel is simply nonsensical. The Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947) first recognized the work-product doctrine by finding that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id*. at 510. This privilege is justified based upon the attorney's solemn duty to promote justice and protect the client's interest. *Id*. at 511; *In re Foster*, 188 F.3d 1259, 1272 (10th Cir.1999) (noting the privilege frees the lawyer to create materials without the fear of discovery and exploitation).

Fed.R.Civ.P.26(b)(5) provides that when a party withholds documents or other information based upon a privilege or subject to protection as trial-preparation materials, the party must "(i)

9

expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Defendant has complied with the rule by expressly making its objection based upon the work product doctrine and has described the documents withheld in a sufficient manner that will enable Plaintiff and this Court to assess the documents withheld— signed statements taken by Defense counsel during this litigation.  In addition, Defendant contends the disclosure of witness statements and the identity of any witness counsel chose to interview would improperly reveal counsel's mental impressions and strategies and compromises the work product doctrine.

The only three elements that must be established by the party seeking to invoke work product immunity are that (1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party. *Zapata v. IBP, Inc.,* 175 F.R.D. 574, 576 (D. Kan. 1997); *Mackey v. IBP, Inc.,* 167 F.R.D. 186, 200 (D. Kan. 1996); *see also* Fed.R.Civ.P. 26(b)(3). A witness statement is clearly work product if taken in anticipation of litigation. *Butler Mfg. Co., Inc. v Americold Corp.*, 148 F.R.D. 275, 277 (D. Kan. 1993).

Here, Defendant has clearly established that the materials sought are documents (signed written witness statements).  The second element (prepared for trial) has also been clearly established as the witness statements were prepared by defense counsel *afte*r Plaintiff filed this lawsuit.  The third element (by a party or by or for a party's representative) is established because the statements were prepared by defense counsel based upon issues counsel believed were important for trial preparation.  (*See* Declaration of Rebecca S. Yocum attached hereto as Ex. 8).

As indicated above, Defendant is not required to produce a privilege log if the documents

withheld based upon work product immunity are described in sufficient detail for the court to ascertain whether the immunity applies. *Lloyds of London Syndicate 2003 v. Fireman's Fund Ins. Co. of Ohio*, 320 F.R.D. 557, 562 (D. Kan. 2017). Courts in the District of Kansas have approached privilege logs in a manner that favors substance over form. *Id.* A privilege log is not always necessary as long as the opposing party and the court can assess whether the claimed privilege applies to the document. *Farha v. Idbeis*, No. 09-1059-JTM, 2010 WL 3168146, at *4 n.11 (D. Kan. Aug. 10, 2010). Defendant has clearly described the documents and established why the work product privilege applies to the witness statements.

Plaintiff's reliance on *McCoo v. Denny's, Inc.,* 192 F.R.D. 675 (D. Kan. 2000) and *Robinson v. City of Arkansas City*, No. 10–1431–JAR–GLR, 2012 WL 603576 (D. Kan. Feb. 24, 2012) is misplaced. In both cases, the district courts addressed the issue of whether the witness statements taken <u>before</u> litigation began were sufficiently shown to be prepared in anticipation of litigation. Here, it cannot be disputed the witness statements were taken by counsel <u>after</u> litigation was filed.

Finally, Rule 26(b)(3) prevents discovery of an attorney's work product unless (1) the discovering party can demonstrate substantial need for the material and (2) the discovering party is unable to obtain the substantial equivalent of the material by other means without undue hardship. Plaintiff makes no demonstration of substantial need. Interestingly, Plaintiff admits knowledge of these witnesses' identities and confirms discussions with these witnesses by stating, "These statements were taken of current and former hourly employees and allegedly relate to Plaintiff's work performance and other issues potentially relevant to this litigation." (*See* Motion at pg. 8). Plaintiff has not articulated any undue hardship that would prevent her from interviewing or deposing any witness and clearly, Plaintiff has already interviewed the witnesses. Plaintiff's

11

request is nothing more than Plaintiff's attempt to poach the work product of defense counsel and should be denied.

**REQUEST FOR PRODUCTION NO. 32:**[1] All text messages sent from or received by Gary Benham at any point from March 1, 2020, to present regarding alleged lost income, reduction in sales as a result of the pandemic, reduction in force, employee layoffs, employee terminations, employee suspensions, employee rehires, employee training or qualifications to work on multiple machines, or any of the claims in this lawsuit.

**REQUEST FOR PRODUCTION NO. 33:** All text messages sent from or received by Mike Allen at any point from March 1, 2020, to present regarding alleged lost income, reduction in sales as a result of the pandemic, reduction in force, employee layoffs, employee terminations, employee suspensions, employee rehires, employee training or qualifications to work on multiple machines, or any of the claims in this lawsuit.

**REQUEST FOR PRODUCTION NO. 34:** All text messages sent from or received by Shelli regarding alleged lost income, reduction in sales as a result of the pandemic, reduction in force, employee layoffs, employee terminations, employee suspensions, employee rehires, employee training or qualifications to work on multiple machines, or any of the claims in this lawsuit.

**RESPONSE TO REQUEST NOS. 32, 33 AND 34:** Defendant objects to [these] Request[s] as repetitive and duplicative of Request No. 26.  Defendant further objects to [these] Request[s] because [they] fail[] to comply with the "reasonable particularity" requirements of Fed. R. Civ. P. 34(b)(1), and [they are] overly broad in time and scope, unduly burdensome, vague and ambiguous, irrelevant, and not proportional to the needs of this case.  Specifically, [these] Request[s] [are] not limited to the Fort Scott plant, and [they] seek[] text messages that do not have any relationship to the pandemic, the April 2020 layoffs at the Fort Scott plant due to the pandemic or the rehiring of employees who had been laid off at the Fort Scott plant due to the pandemic. Defendant further objects to [these] Request[s] to the extent [they] may be interpreted as calling for text messages protected from disclosure by the attorney-client privilege or work product doctrine. Subject to and without waiving these objections, and to the extent Defendant understands this Request, Defendant does not have any text messages between Mike Allen, Shelli Randall and Gary Benham in March 2020 and April 2020 relating to the April 2020 layoffs at the Fort Scott plant or the rehiring of employees who had been laid off at the Fort Scott plant due to the pandemic.

**ARGUMENT:**  As a threshold matter, these Requests are duplicative of Plaintiff's Request No. 26, which was part of Plaintiff's First Requests for Production, and which sought, in part, all text messages from any employee, manager, or supervisor that mentioned Plaintiff or her

---

[1] As Requests Nos. 32, 33 and 34 are identical (with the exception of No. 34 which fails to identify "Shelli" and contains no temporal scope), they are addressed together.

discrimination and retaliation allegations. Defendant objected to Request No. 26 as overly broad, irrelevant and burdensome.

Next, these Requests are facially overbroad and facially irrelevant as they seek information that has no relationship to the claims in this lawsuit and are not proportional to the needs of this case. Further, these Requests not only seek information protected by the attorney-client privilege, but they also seek an incredibly onerous and broad range of information that is not limited to the Fort Scott plant or to similarly situated employees. Plaintiff was laid off in April 2020 pursuant to the pandemic. Thus, suspension, termination, training, employee qualifications and lost income have no relevance to the claims in this lawsuit. During the parties' meet and confer on January 23, 2022, Plaintiff's counsel refused to limit the requests in any way. Defense counsel, nevertheless, proceeded to limit the Requests to March and April 2020 text messages relating to the April 2020 layoffs and the rehiring of certain individuals. In response, Defendant stated that no such text messages exist.

Notwithstanding the above, Defendant has produced financial documents relating to the sales decline. Defendant has provided the facts supporting its affirmative defenses, the requested information relating to all press operators considered for layoff, the various machines each press operator could run, identified those within Plaintiff's business unit chosen for layoff and the dates other press operators were recalled. (*See* Defendant's Answer to Plaintiff's Interrogatory Nos. 4, 10, 11, 13, 15 and 16 attached hereto as Ex 9).

**REQUEST FOR PRODUCTION NO. 35:** All telephone records, including but not limited to office telephones, cellular phones provided or supplied by You, or any cellular phone used to contact employees, supervisors, or managers for the following individuals: Mike Allen, Shelli Randall, and Gary Benham, and for the following time period: March 1, 2020, through Jan. 1, 2021. The response to this request should also identify the specific phone number associated with each individual and whether that is an office telephone, a company provided cellular phone, or a personal cellular phone.

**RESPONSE:** Defendant objects to this Request because it fails to comply with the "reasonable particularity" requirements of Fed. R. Civ. P. 34(b)(1) and is overly broad in time and in scope, unduly burdensome, vague, ambiguous, irrelevant, and not proportional to the needs of this case. Specifically, this Request seeks "all" telephone records without regard to the identity of the caller or the purpose of the call. Defendant further objects to this Request as an invasion of the privacy interests of individuals who are not parties to this lawsuit.

**ARGUMENT:** This Request is facially overbroad and seeks to learn of every phone call that Mr. Allen, Ms. Randall and Gary Benham made or received during any point over a 10-month period. The information sought is not relevant on its face to Plaintiff's claim or any defenses. Plaintiff fails to explain how this overly broad and unduly burdensome request is relevant to her claims. Specifically, the telephone records will not identify the purpose of the call, the recipient of the call or the identity of the caller. Ms. Randall is the human resource manager for five separate plants. (*See* Ex. 7 at 16:9-16). Mr. Allen is the general manager of four separate plants. (*Id.* at 38:19-39:1). Mr. Benham is the plant manager for two separate plants. (*See* G. Benham Dep. attached hereto as Ex. 8 at 12:17-13:7). The mere fact that Ms. Randall, Mr. Benham or Mr. Allen used their phone on a certain date does not prove their discussion centered around Plaintiff or the layoffs at the Fort Scott plant—such records prove nothing. Requiring Defendant to collect all such onerous records is not proportionate to the needs of the case. *Rowan v Sunflower Elect. Power Corp.*, No. 15-cv-9227-JWL-TLJ, 2016 WL 2772210 at *6 (D. Kan. May 13, 2016) (holding request for 7 days of cell phone records disproportionate to needs of the case). Defendant's objections should therefore be sustained.

## CONCLUSION

Defendant respectfully asks this Court to sustain all its objections and to deny Plaintiff's Motion to compel in its entirety.

Dated: February 18, 2022

LATHROP GPM LLP

*/s/ Rebecca S. Yocum*
Jill Waldman (KS #19634)
Rebecca S. Yocum (KS #14222)
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
Telephone: (816) 292-2000
Facsimile: (816) 292-2001
Email: jill.waldman@lathropgpm.com
rebecca.yocum@lathropgpm.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, I electronically filed the foregoing *Defendant Ennis Business Forms of Kansas, Inc.'s Memorandum in Opposition to Plaintiff's Motion to Compel* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to Plaintiff's Counsel of Record as follows:

Michael A. Williams
Courtney M. Stout
WILLIAMS DIRKS DAMERON LLC
1100 Main Street, Suite 2600
Kansas City, MO 64104
Email: mwilliams@williamsdirks.com
cstout@williamsdirks.com

ATTORNEYS FOR PLAINTIFF

*/s/ Rebecca S. Yocum*
Attorney for Defendant

## CONCLUSION

Defendant respectfully asks this Court to sustain all its objections and to deny Plaintiff's Motion to compel in its entirety.

Dated: February 18, 2022            LATHROP GPM LLP

*/s/ Rebecca S. Yocum*
Jill Waldman (KS #19634)
Rebecca S. Yocum (KS #14222)
LATHROP GPM LLP
2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
Telephone: (816) 292-2000
Facsimile: (816) 292-2001
Email:  jill.waldman@lathropgpm.com
         rebecca.yocum@lathropgpm.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2022, I electronically filed the foregoing *Defendant Ennis Business Forms of Kansas, Inc.'s Memorandum in Opposition to Plaintiff's Motion to Compel* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to Plaintiff's Counsel of Record as follows:

Michael A. Williams
Courtney M. Stout
WILLIAMS DIRKS DAMERON LLC
1100 Main Street, Suite 2600
Kansas City, MO 64104
Email:  mwilliams@williamsdirks.com
         cstout@williamsdirks.com

ATTORNEYS FOR PLAINTIFF

*/s/ Rebecca S. Yocum*
Attorney for Defendant