IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LINDA ARMSTRONG, <br><br> Plaintiff, <br><br> v. <br><br> ENNIS BUSINESS FORMS OF KANSAS, INC., <br><br> Defendant. | Case No. 2:21-cv-02258-KHV-TJJ |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS**

**COMES NOW** Plaintiff Linda Armstrong ("Ms. Armstrong" or "Plaintiff"), hereby offers her Reply Memorandum in Support of her Motion to Compel Defendant to produce documents in response to Plaintiff's Second Request for Production of Documents Nos. 28, 29, 31, 32, 33, 34, and 35.

**DISCOVERY REQUESTS IN DISPUTE**

**REQUEST FOR PRODUCTION NO. 28**: All versions of any reduction in force policy(ies) implemented or utilized by You during any reduction in force at any point from Jan. 1, 2007, through present.

First, Defendant asserts this request is facially overbroad and irrelevant. This is untrue. Defendant represents that there was no reduction in force policy in place at the time of the April 2020 reduction in force at the Fort Scott plant. During a deposition of Shelli Randall, Plaintiff learned that Defendant has implemented a reduction in force and had an accompanying reduction in force policy that was used at least one time before. Specifically, Shelli Randall testified that a reduction in force occurred during her tenure at the Fort Scott plant from 2008-2009.

The 2008-2009 reduction in force policy is relevant because it demonstrates what Defendant's reduction in force policy has been in the past and how the Fort Scott plant has

previously evaluated and implemented a reduction in force. According to Ms. Randall, this is the most recent reduction in force policy for the Fort Scott plant. *See* **Plt. Ex. E**, Excerpt from Randall Deposition Transcript at 161:6-13. This is relevant because Defendant's entire defense is that a reduction in force was required due to declining sales during the pandemic. But, when asked for any policies on this reduction in force, Defendant rests behind its statement that there was no reduction in force policy in effect in 2020. Defendant cannot simply hide behind this. Because there was no policy in place at the time of the 2020 terminations, Plaintiff is entitled to review a recent past reduction in force policy that may have been referenced, reviewed, or recollected upon in carrying out the recent reduction in force policy. As Ms. Randall testified, she was present for the 2008-2009 reduction in force, thus, Ms. Randall easily may have referenced that policy in carrying out the 2020 reduction in force. Ms. Randall testified that this is the only reduction in force policy at the Fort Scott plant since the beginning of her tenure at the Fort Scott plant in 1999; therefore, the production of this single policy is not unduly burdensome or overbroad.

Second, Defendant asserts this request is duplicative of Request No. 23. As addressed in Plaintiff's opening motion, Defendant stated that no responsive documents existed in response to Request No. 23, which asked for "all documents containing your manuals, policies, guidelines, or procedures in existence at the time Ms. Armstrong was employed with Defendant …". During Shelli Randall's deposition, she stated that there was a reduction in force policy that existed in 2008 and 2009. *See* **Plt. Ex. E,** at 160:23-161:13. Request No. 28 seeks that 2008-2009 reduction in force policy – and any others if such exist. Plaintiff has asserted a new discovery request for a different time period after learning in Ms. Randall's deposition that Defendant did in fact operate a reduction in force policy in the past. Further, Request No. 28 is significantly narrowed from Request No. 23 in that Request No. 28 asks for reduction in force policies only and Request No.

2

23 asks for a broader range of policies. Because the substance of the requests differ, Request No. 28 is not duplicative of Request No. 23.

Third, Defendant attempts to distinguish cases cited by Plaintiff, but this attempt fails. Defendant attacks Plaintiff's reliance on Moll v. Telesector Resources Group, Inc., 760 F.3d 198 (2nd Cir. 2014); Rodger v. Electronic Data Systems, Corp., 155 F.R.D. 537 (E.D. N.C. 1994); Hollander v. American Cyanamid Co., 895 F.2d 80 (2nd Cir. 1990); and Penk v. Oregon State Bd. of Higher Education, 99 F.R.D. 506 (D. Or. 1982). In *Moll* and *Rodger*, the fact that those plaintiffs received the past three years of reduction in force policies compared to Plaintiff's request for 2007 and forward is not distinguishable. Indeed, the only reduction in force policy Ms. Randall represents that the Fort Scott plant has is the 2008-2009 policy; therefore, as discussed above, this would require production of only one policy. *Moll* and *Rodger* may very well have had multiple policies in that time frame, thus justifying only a three-year time period.

Further, Defendant's attempt to distinguish *Hollander* fails. The discovery request the court required produced in *Hollander* is more broad than the request Plaintiff makes here because in *Hollander*, the Court ordered production of information beyond the plant where the plaintiff worked. Hollander, 895 F.2d at 84. Here, Plaintiff only seeks information regarding the Fort Scott plant.

Finally, Defendant's attempt to distinguish *Penk* fails. In *Penk*, the Court ordered production of reduction in force policies, finding the plaintiff should have the ability to review reduction in force policies because they may have a discriminatory impact. *Penk*, 99 F.R.D. at 506-07. This supports Plaintiff's position. Further and importantly, Defendant fails to cite to any case law to support its position in this situation.

3

Accordingly, Plaintiff's narrowed and streamlined request for reduction in force policies after 2007 is not overly burdensome as, according to Ms. Randall, it will only result in production of one policy and is relevant to this litigation and Defendant's claimed defenses.

**REQUEST FOR PRODUCTION NO. 29:** All Documents and Communications providing the number of hours worked by employees for the following time period: March 1, 2019, through Jan. 2, 2021.

The number of hours worked by employees before, during, and after the reduction in force is highly relevant to this litigation. Defendant's defense in this case is that Plaintiff was not terminated due to her age, but because the amount of job assignments for the machines she operated declined due to the pandemic. Therefore, to prove or disprove this defense, Plaintiff must be entitled to view the hours worked by employees before, during, and after the reduction in force to determine if the decline in sales reduction in workers was needed or if it was simply pretext for discrimination. *See e.g.*, Caviston v. Johnson Controls, Inc., Case No. 1:19-cv-01409, 2020 WL 3440565, at *5-6 (M.D. Penn. June 23, 2020) (in an age discrimination case with the implementation of a reduction in force, the court granted a motion to compel production of sales data for a fifteen-month period).

Defendant also states that the time period for before and after the reduction in force is irrelevant and overbroad. However, simply receiving the employee hours worked for April 2020 would only give Plaintiff a snapshot of the hours worked at that time. Without any past or future employee hours to compare, this snapshot would have no relative value. Without this comparison, Plaintiff is unable to determine how employee hours fluctuated due to work demand, if at all, as a result of the COVID 19 pandemic. Further, Defendant expresses concern that this request is not limited to the Fort Scott plant. To the extent there was any confusion, Plaintiff agrees to limit this request to the Fort Scott Plant.

Next, whether Request No. 29 may be duplicative of Requests Nos. 15 and 16 is insignificant because the documents were never produced. Further, after the initial discovery requests were served, Plaintiff was able to depose two influential decision makers in the Fort Scott plant. Both deponents heavily relied on the reduction in sales as the reason Plaintiff was terminated. Therefore, Defendant's representatives have squarely put this at issue after the serving of the first requests.

Third, Defendant claims "all Documents and Communications" is overly broad. Plaintiff seeks timecards, schedules, timesheets, and communications about hours worked during a specific period of time. This is regularly kept in the course of business as required by law, and to the extent Defendant had any confusion about this request, Plaintiff's counsel would have been more than willing to discuss this further with Defendant. Defendant's refusal to produce these documents now on the basis of a vague or ambiguous objection is improper. *See* Swackhammer v. Sprint Corp. PCS, 225 F.R.D. 658, 662 (D. Kan. Dec. 13, 2004) (the party resisting a discovery request based on vagueness or ambiguities has the burden to show why and "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized . . . [in discovery requests]"). To the extent there is sincere confusion, Defendant could have brought this up during the meet and confer conference.

Finally, to the extent Defendant claims some responsive documents are privileged, Defendant must: "(i) expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Parties should produce a privilege log that contains information about: 1) the document type; 2) the date the document was prepared; 3) the document's date (if different);

4) the author; 5) the identity of the person for whom it was prepared; 6) the purpose of preparing the document; 7) the number of pages; 8) the party's basis for withholding the document; and 8) any other pertinent information necessary to establish the elements of each asserted privilege." Kannady v. Ball, 292 F.R.D. 640, 645 (D. Kan. 2013). Here, Defendant used conclusory privilege objections and failed to produce a privilege log. Plaintiff has no way to evaluate the merits of the alleged privilege claims without such log. Plaintiff has repeatedly requested that Defendant produce a privilege log, but Defendant has consistently refused to do so.

**REQUEST FOR PRODUCTION NO. 31:** All signed statements procured by you or your representatives relating to this case, including but not limited to, signed statements that resulted during or after interviewing, meeting with, or otherwise talking to employees or former employees about the 2020 reduction in force, sales decline due to the pandemic, this case, or Ms. Armstrong's claims.

Plaintiff is seeking the **signed** (and potentially notarized) witness statements that were taken of current and former hourly employees and allegedly relate to Plaintiff's work performance and other issues potentially relevant to this litigation. Defendant refuses to produce the statement(s), provide a privilege log, or provide the names of the witnesses they procured statements from, claiming the signed statements and the identity of the witnesses are protected by the work product doctrine.

However, third party, formal, and signed witness statements are not protected by the work product doctrine. *See e.g.*, Murphy v. Kmart Corp., 259 F.R.D. 421, 431 (D.S.D. 2009) (holding that third party affidavits are not entitled to work production protection); Tuttle v. Tyco Elecs. Installation Servs., Inc., Case No. 2:06-cv-581, 2007 WL 4561530, at *2 (S.D. Ohio Dec. 21, 2007) (finding that drafts and communications may be work product but the final witness affidavit is not protected by the work product doctrine); Schipp v. Gen. Motors Corp., 457 F. Supp. 2d 917,

6

924 (E.D. Ark. 2006) ("any verbatim non-party witness statements are neither privileged nor work product and must be produced.").

This is because third party witness statements are not the *type* of document protected by this doctrine. Courts are clear that the work product doctrine "is only intended to guard against divulging the attorney's strategies and legal impressions, [and] it does not protect facts concerning the creation of work product or facts contained within work product." Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir. 1995).[1] S*ee also* Koch Materials Co. v. Shore Slurry Seal, Inc., 208 F.R.D. 109, 121–22 (D.N.J. 2002) (information in pricing spreadsheets gathered at the attorney's request was not protected by work product doctrine).

Here, the witness statements are not summaries based on attorney notes or attorney recollection that would invade upon the mental impressions of Defendant's counsel nor are the witness statements summaries or other memorialization's of counsel's mental impressions that would be subject to work product protection. Rather, the witness statements are answers that reflect the recollection and or opinions of the *third party witnesses*, not counsel. Thus, Defendant's counsel cannot claim the third party witness answers and opinions reflect counsel's strategies or opinions. See Walker v. George Koch Sons, Inc., Case No. 2:07-cv-274, 2008 WL 4371372, at *6 (S.D. Miss. Sept. 18, 2008) (stating witness statement affidavits are discoverable because they "purport[] to be a statement of facts within the personal knowledge of the witness, and not an expression of the opinion of counsel"); Tuttle, 2007 WL 4561530, at *2 ("[a]ffidavits are normally not protected by the work product doctrine for the very reason that an affidavit 'purports to be a

---

[1] *See also* Guardsmark, Inc. v. Blue Cross & Blue Shield, 206 F.R.D. 202, 207 (W.D. Tenn. 2002) ("[T]he 'work product' doctrine does not protect facts concerning the creation of work product or facts contained within the work product."); Lifewise Master Funding v. Telebank, 206 F.R.D. 298, 303 (D. Utah 2002) ("Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts within the product.").

statement of facts within the personal knowledge of the witness, and not an express of the opinion of counsel.'"); E.E.O.C. v. Jamal & Kamal, Inc., Case No. 05-2667, 2006 WL 2690226, at *1, 3 (E.D. La. Sept. 18, 2006) (ordering production of witness affidavit, stating the affidavit was simply "an attorney's memorialization of events, effectively acting as a stenographer, does not fall within the sphere of documentation protected by the work product privilege"); Dobbs v. Lamonts Apparel, Inc., 155 F.R.D. 650, 653 (D. Alaska 1994) ("What counsel are entitled to protect is *their* work and *their* thoughts and *their* analysis of the case, not the knowledge possessed by third parties.") (emphasis in original).

Plaintiff does not seek Defendant's counsel's notes from the interview, summary of the interview, or attorney drafts of any statements; Plaintiff only seeks the final, signed statements. Accordingly, Defendant should be required to produce the witness statements.

However, even if the Court finds the statements are protected by the work product doctrine, Plaintiff has no other means to receive these statements, thus their production is proper under the necessity exception. This exception applies when a party can show a substantial need for the material and the other party cannot obtain the material without undue hardship. McCoo v. Denny's Inc, 192 F.R.D. 675, 683 (D. Kan. 2000). Rule 26(b)(3) describes this exception as documents ordinarily subject to work product protection may be discovered "upon a showing that the party seeking the need of the materials in preparation of the party's case and that the party is unable to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Here, Plaintiff has no means to identify when the statements were procured; who provided the statements; or the underlying factual information provided in the statements.[2] Plaintiff believes the

---

[2] During the meet and confer phone call, Defendant stated the identity of the individuals interviewed were provided on Defendant's Rule 26 disclosures. However, the identify of these witnesses is not provided. *See* **Plt. Ex. G,** Defendant's Initial Rule 26 Disclosures.

statements contain information about Plaintiff's allegations of age discrimination, including any factual recitations of discriminatory incidents observed by the witnesses, and the impact of COVID-19 on the Fort Scott plant's economic viability and sales data. This information is highly important to Plaintiff's case as Defendant may attempt to use these statements at trial or in dispositive motion briefing. Without this information, Plaintiff would have no way to discern the content of the statements or the identity of the witness until faced at trial or in a dispositive motion. Plaintiff cannot gain this factual information from depositions or discovery to high-level management at the plant. Plaintiff has no other avenue of gaining this information because Defendant has refused to provide the identity of the witnesses or the underlying facts of the statements to allow Plaintiff to have an opportunity to question those witnesses in a deposition. Without this, Plaintiff's hands are tied in her ability to defend herself at summary judgment or trial. Accordingly, such production is required under the necessity exception.

Finally, at the very least, Defendant should be required to identify the witnesses and describe the statements being withheld pursuant to Rule 26. *See e.g.*, Kizer v. N. Am. Transp. Servs., LLC, Case No. CIV-18-846-D, 2020 WL 6263733, at *4 (W.D. Okla. Oct. 23, 2020) (if formal witness statements are being withheld for privilege, these statements must be documented on a privilege log provided to opposing counsel); In re Theragenics Corp. Sec. Litig., 205 F.R.D. 631, 634 (N.D. Ga. 2002) ("Numerous courts … have recognized that names and addresses of witnesses interviewed by counsel who have knowledge of the facts alleged in the complaint are not protected from disclosure s."). Further, the identity of the individual who provided the statement is necessary to evaluate whether or not the necessity exception applies.

At the very least, Defendant should be required to produce a privilege log so that the alleged statements can be evaluated. The refusal to produce the statements or identify the witnesses thwarts Plaintiff's ability to interview or depose these individuals prior to the close of discovery.

**REQUEST FOR PRODUCTION NO. 32:** All text messages sent from or received by Gary Benham at any point from March 1, 2020, to present regarding alleged lost income, reduction in sales as a result of the pandemic, reduction in force, employee layoffs, employee terminations, employee suspensions, employee rehires, employee training or qualifications to work on multiple machines, or any of the claims in this lawsuit.

**REQUEST FOR PRODUCTION NO. 33:** All text messages sent from or received by Mike Allen at any point from March 1, 2020, to present regarding alleged lost income, reduction in sales as a result of the pandemic, reduction in force, employee layoffs, employee terminations, employee suspensions, employee rehires, employee training or qualifications to work on multiple machines, or any of the claims in this lawsuit.

**REQUEST FOR PRODUCTION NO. 34:** All text messages sent from or received by Shelli [Randall] regarding alleged lost income, reduction in sales as a result of the pandemic, reduction in force, employee layoffs, employee terminations, employee suspensions, employee rehires, employee training or qualifications to work on multiple machines, or any of the claims in this lawsuit.

First, Defendant's claim that these Requests are duplicative of Request No. 26 has no merit. Defendant unilaterally narrowed Request No. 26 to a two-month time period and then responded that no text messages exist. Further, Request No. 26 sought text messages about Plaintiff or her discrimination allegations, but here, Request Nos. 32-34 request concerns text messages about the reduction in force due to the pandemic, employee layoffs and terminations, and employee warehouse machine qualifications. These requests seek a different line of text messages than Request 26 because they seek text messages related to the reduction in sales that allegedly required a reduction in force. Therefore, the language of Requests 32-34 would not be encompassed in Request No. 26.

Defendants also argue these messages are overboard and irrelevant. This is untrue. First, these requests are not overbroad and meet the specificity requirement. The requests are limited to

text messages from three individuals who were involved in the alleged RIF process. Further, the Requests are properly limited substantively because the text messages are limited to RIF-related topics such as the pandemic; the purported lost sales and income; employee actions such as suspensions, layoffs, and terminations; the RIF selection criteria, the RIF process; and claims asserted in this lawsuit. Request Nos. 32 and 33 are properly limited temporally because the date range is from March 1, 2020 to the present. Request No. 34 is properly limited temporally by virtue of the fact that the text messages are confined to certain subjects i.e., the subject matter is RIF-related which, by virtue of the subject, lends itself to a time limitation. Further, Plaintiff would agree to limit Request No. 34 to the same time period as provided in Request Nos. 33 and 34.

Further, these requests ask for text messages sent or received by Gary Benham, Mike Allen, or Shelli Randall regarding the pandemic impact on sales, reduction in force, layoffs, etc. Defendant states that it does not have text messages *between* Mike Allen, Shelli Randall, or Gary Benham; however, while this is helpful, this does not indicate that no responsive text messages exist because these requests seek texts sent or received by those three individuals to others as well. Plaintiff has not agreed to this universal limitation limiting the messages only to those between Allen, Randall, and Benham.

In sum, compelling production of text messages from three individuals on specific, limited topics with a temporal limitation is widely accepted. *See* Walker v. Newman University, Inc., Case No. 2:19-cv-2005, 2020 WL 4698504, at *2 (D. Kan. Aug. 13, 2020) (J. James) (compelling production of text messages); Benney v. Midwest Health, Inc., Case No. 17-2548, 2018 WL 6042591, at *6 (D. Kan. Nov. 19, 2018) (compelling production of text messages between "Plaintiff and Defendant, its employees, attorneys, supervisors and/or agents" and stating any concern about confidentiality shall be alleviated based on the protective order); Helget v. City of

Hays, Kans., 300 F.R.D. 496, 501 (D. Kan. 2014) (finding that "logs or records pertaining to text messages about Plaintiff or Plaintiff's termination, created or maintained either by specified City personnel or wireless providers, have sufficient discovery relevance and could produce discoverable information … [t]ext message logs or records could provide Plaintiff with informant pertaining to her termination and the decision making process behind it …").

Finally, Plaintiff is not seeking any text messages about this lawsuit to or from Ms. Randall, Mr. Benham, or Mike Allen and their attorneys. Therefore, Defendant's claim of attorney client privilege is not at issue.

**REQUEST FOR PRODUCTION NO. 35:** All telephone records, including but not limited to office telephones, cellular phones provided or supplied by You, or any cellular phone used to contact employees, supervisors, or managers for the following individuals: Mike Allen, Shelli Randall, and Gary Benham, and for the following time period: March 1, 2020, through Jan. 1, 2021. The response to this request should also identify the specific phone number associated with each individual and whether that is an office telephone, a company provided cellular phone, or a personal cellular phone.

Here, Plaintiff's request is reasonably limited in that it seeks telephone bills from three key individuals for a discrete period of time. Such records would not be costly or time consuming to procure and produce. These records are relevant and discoverable. Defendant claims that it only held one to two phone calls in its decision whether to implement a reduction in force and how to implement a reduction in force. Similarly, Defendant claims there were very few communications between these individuals during the time period they decided to hire back workers that were terminated. Plaintiff is entitled to review and test these assertions as they directly relate to Plaintiff's position that the reduction in force was pretextual to unlawfully terminate older works.

## CONCLUSION

**WHEREFORE**, Defendant should be ordered to produce documents in response to Plaintiff's Second Requests for Production Nos. 28, 29, 31, 32, 33, 34 and 35. Defendant should also be required to produce a detailed privilege log for all documents being withheld or the statements and other documents should be barred from use in this litigation. Finally, Plaintiff seeks her attorney's fees related to the drafting of this motion and for such other and further relief as the Court deems just and proper.

Dated: March 2, 2022                    Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

/s/ Michael A. Williams

**WILLIAMS DIRKS DAMERON LLC**
Michael A. Williams, KS Bar No. 19124
Courtney M. Stout, KS Bar No. 28447
1100 Main Street, Suite 2600
Kansas City, MO 64105
mwilliams@williamsdirks.com
cstout@williamsdirks.com
(o) 816-945-7110
(f) 816-945-7118

**Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of March, 2022, the foregoing was filed with the Court's electronic CM/ECF system, which provided notice of the same to all counsel of record.

/s/ Michael A. Williams

Attorney for Plaintiff