IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LINDA ARMSTRONG,**  )<br>     )<br>        **Plaintiff,** )<br>     )<br>**v.** )<br>     )<br>**ENNIS BUSINESS FORMS** )<br>**OF KANSAS, INC.,** )<br>     )<br>        **Defendant.** )<br>_____) | CIVIL ACTION<br><br>No. 21-02258-KHV |

### MEMORANDUM AND ORDER

Linda Armstrong filed suit against her former employer, Ennis Business Forms of Kansas, Inc., for age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #52) filed June 30, 2022. For reasons stated below, the Court sustains defendant's motion in part and overrules it in part.

### Legal Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Liberty Lobby, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which the nonmoving party carries the burden of proof. Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). To carry her burden, the nonmoving party may not rest on the pleadings but must instead set forth specific facts supported by competent evidence. Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250–51. In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 251–52.

## Facts

The following facts are either uncontroverted, deemed admitted or construed in the light most favorable to plaintiff.

Defendant is a commercial printing company doing business in Fort Scott, Kansas. Defendant's parent company is Ennis, Inc. Mike Allen is the Fort Scott location's General

Manager and Shelli Randall is its Human Resources Manager. Gary Benham was defendant's Plant Manager from May of 2019 to June of 2021. Benham reported to Allen and supervised plaintiff and all other production employees at the Fort Scott location. Production employees included employees in the Bindery department, who assembled and bound books and other printed materials, and employees who operated various press machines.

Defendant classifies its employees into different categories based on their skill and pay level. A Scale positions are the lowest skill level and include Bindery workers. B scale positions include Register Press Operators. C Scale employees include Jet, Ryobi, Nale and Heidelberg Operators. D Scale employees include Rotary Press Operators.

Defendant hired plaintiff on February 24, 1981 as a Bindery worker, an A Scale position. In approximately 1991, defendant promoted plaintiff to Register Press Operator, where she worked until defendant laid her off on April 13, 2020. Although Registered Press Operator is a B Scale position, plaintiff was a C Scale worker at the time defendant laid her off.[1] Plaintiff made $14.56 an hour as a Register Press Operator. From the record, it appears that plaintiff was the only Register Press Operator at the Fort Scott plant.

---

[1] The parties dispute whether plaintiff was a B or C Scale worker at the time of her layoff. In the Pretrial Order, the parties stipulated that defendant promoted plaintiff to Register Press Operator in 1991 and, at least at that time, Register Press Operator was a B Scale position. Pretrial Order (Doc. #50) entered June 14, 2022 at 2. In a declaration, plaintiff stated as follows: "At the time of my layoff on or about April 13, 2020, I was the only 'B' scale employee employed by Defendant." Exhibit 14 (Doc. #62-14) at 2. At the same time, however, plaintiff argues that she was a C Scale worker when defendant laid her off because: (1) she sometimes operated the Nale and Heidelberg Presses, which were C Scale machines, to cover for employees who were sick or on vacation; and (2) the record includes an "Ennis Business Forms, Inc. Pay Change Request" form, dated January 28, 2000, signed by a Supervisor, a General Manager and a Corporate Officer, that lists plaintiff as a C Scale employee. Exhibit 1 (Doc. #62-1) at 2. Viewing all factual disputes in the light most favorable to plaintiff, plaintiff has raised a genuine issue of material fact whether she was a C Scale worker when defendant laid her off. Even if defendant classified plaintiff as a B Scale worker, however, it is undisputed that plaintiff sometimes performed C Scale-level work on the Nale and Heidelberg presses.

Sometimes plaintiff spent her entire workday working at the Register Presses, but if plaintiff finished her Register Press work early, she often performed Bindery work for the rest of the day.  Plaintiff also sometimes operated the Nale and Heidelberg Presses, which were C Scale machines, to cover for employees who were sick or on vacation.

After the COVID-19 pandemic began in March of 2020, Allen informed Randall and Benham that he planned to conduct a layoff.  Allen decided to implement the layoff without speaking to anyone from defendant's corporate office or legal department and without looking at any corporate policy: "I made the decision to layoff and then I talked to my superior at corporate."  Exhibit C (Doc. #53-3) at 18–19.  Allen did not seek opinions or advice from Randall or Benham on how to implement the reduction in force or whether it was necessary.

Allen directed Benham to determine which employees at the Fort Scott location could operate which press machines.  Benham stated that he walked around the plant for three days and, without taking notes or referencing paperwork, for all production employees in the plant, memorized who could run which machines.  Benham informed Allen which employees could run which machines.  Allen did not investigate or verify this information.  Allen then determined which employees to lay off.  Allen testified that to continue operating the plant with a reduced number of workers, he wanted to retain employees who could run multiple machines.  Randall created one written note to record the names of the employees selected for layoff, and subsequently threw that note away.  Neither Allen, Benham nor Randall created any other documentation at this time.

Allen testified that he decided to lay off plaintiff because Benham informed him that plaintiff could only work at the Register Press, "which was a two- to four-hour-a-day job at the

4

time," and in Bindery.[2]  Exhibit E (Doc. #53-5) at 3–4.  Defendant laid off plaintiff on April 13, 2020. At that time plaintiff was 67 years old and was the oldest press worker.  After defendant laid off plaintiff, press workers whom defendant did not lay off shared the duties of completing Register Press work.  Exhibit F (Doc. #53-6) at 4–5.  Altogether, defendant laid off seven press workers in or around March and April of 2020, as indicated below:

| Employee | Age | Year started | Job title | Job class | Laid off? |
|---|---|---|---|---|---|
| W.P. | 47 | 1999 | Jet Operator | C | Laid off |
| L.R. | 50 | 2000 | Jet Operator | C | |
| D.S. | 50 | 1993 | Jet Operator | C | |
| S.R. | 53 | 1985 | Jet Operator | C | |
| R.S. | 53 | 1988 | Jet Operator | C | |
| C.V. | 59 | 1997 | Jet Operator | C | Laid off |
| J.H. | 60 | 1990 | Jet Operator | C | Laid off |
| S.A. | 56 | 1987 | Nale Operator | C | |
| L.A. (plaintiff) | 67 | 1981 | Register Operator | C | Laid off |
| J.G. | 51 | 2002 | Ryobi Operator | C | |
| D.C. | 65 | 2000 | Ryobi Operator | C | Laid off |
| S.H. | 43 | 1999 | Rotary Operator | D | |
| J.M. | 47 | 2002 | Rotary Operator | D | Laid off |
| J.R. | 51 | 2019 | Rotary Operator | D | |
| S.H. | 55 | 2014 | Rotary Operator | D | Laid off |

---

[2]      Plaintiff disputes that Register Press Operator was only a two- to four-hour-a-day job and states that she sometimes spent her full eight-hour shift working at the Register Presses.

Exhibit E (Doc. #53-6) at 2–5.  The average age of the laid-off press workers was 57.14.  The average age of the retained press workers is 50.88.  Plaintiff was between 11 and 24 years older than the press workers whom defendant did not lay off.

Defendant laid off additional employees who were not press workers.  Defendant laid off one Bindery worker and retained five Bindery workers.  All retained Bindery workers were younger than plaintiff and ranged in age from 22 to 63.  Exhibit 11 (Doc. #64-3) at 3; Reply In Support Of Motion For Summary Judgment (Doc. #69) filed August 26, 2022 at 22.  In total, defendant laid off 13 employees.  Before the layoff, the Fort Scott location had between 43 and 45 employees.

Beginning in May of 2020, Allen started recalling certain employees.  Allen did not discuss his decision to recall employees with corporate or defendant's legal department or look to see if defendant had any policies about how to implement an employee recall.  Benham informed Allen when the workload increased enough on a specific machine that defendant needed to rehire a worker.  Exhibit D (Doc. #53-4) at 88.  Benham determined the workload on each machine by walking around and looking at the number of orders placed at each machine by the machine's daily job jackets.  Benham did not perform any formal counting or use any other method or data to determine the workload of each machine.  Allen reviewed defendant's sales, order counts and revenue before approving any rehire request but relied only on Benham's observations in deciding to rehire a worker.  Allen determined which workers he should rehire and did not seek Benham's opinion on who he should rehire and in what order. Allen did not create any documentation when deciding who to rehire.

Although defendant rehired most of the laid-off press workers in May and June of 2020, defendant did not offer to rehire plaintiff at this time.  Benham informed Allen that the Register

6

Press did not have enough work to keep somebody busy for a full eight-hour shift.  Allen did not investigate or verify this statement.

On or around October 30, 2020, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  In her EEOC charge, plaintiff (1) summarized her employment history at Ennis; (2) explained that Randall and Benham laid her off on April 13, 2020 and blamed the layoff on COVID-19; (3) alleged that defendant only hired back younger laid-off employees;[3] (4) stated that defendant replaced her with younger workers who had no Register Press experience; (5) stated that she received no termination paperwork and she "cannot discern any event or allegation during my career . . . which would subject me for termination;" and (6) concluded "I believe I was discriminated based on my age in violation of the ADEA."  Exhibit 5 (Doc. #62-5) at 3.  Plaintiff checked the boxes for "Age," "Retaliation" and "Other" as her causes of discrimination and also checked the box for "Continuing Action."  She did not explain the basis for her retaliation claim, however, in the charge of discrimination.  Id. at 2–3.  From the record, it appears that despite checking the box for "retaliation" on her EEOC charge, plaintiff never made any formal or informal complaints of discrimination before she filed the EEOC charge.  Exhibit A (Doc. #53-1) at 33.  Also, she never amended or supplemented the EEOC charge.  Id.

On December 2, 2020, defendant offered to rehire plaintiff for a position in Bindery paying $13 an hour.  Before extending the offer, defendant knew that plaintiff had filed a charge of discrimination with the EEOC.  Randall and Allen spoke to Ron Graham, Vice President of Administration. Randall asked Graham if she could offer plaintiff a position in the Bindery

---

[3] Specifically, plaintiff stated as follows: "Ennis hired back all but five of the employees it terminated.  Four of the five employees, including myself, were all over sixty (60) years old and the other was over fifty (50) years old."  Exhibit 5 (Doc. #62-5) at 2.  It is not clear from the record who these four other employees are.

department, and if she could offer plaintiff the position for $13 per hour, while plaintiff had a charge of discrimination pending against defendant. Graham answered affirmatively to both questions.

Plaintiff rejected the offer to work in Bindery, which paid less than the $14.56 an hour she had originally received as a Register Press Operator. Defendant ultimately transferred an employee (age 62) into the position of Register Press Operator on September 19, 2021. Exhibit F (Doc. #53-6) at 4–5.

With the exception of plaintiff and another employee referred to as D.C., defendant offered to rehire every laid off press machine worker for the same job he or she had originally worked and with the same duties and pay, roughly in order from youngest to oldest, as indicated below:

| Employee | Age | Job title | Date of Offer to Rehire | Duties and Wages |
| --- | --- | --- | --- | --- |
| W.P. | 47 | Jet Operator | May 26, 2020 | Same duties, same wages |
| J.M. | 47 | Rotary Operator | May 26, 2020 | Same duties, same wages |
| S.H. | 55 | Rotary Operator | June 1, 2020 | Same duties, same wages |
| J.H. | 60 | Jet Operator | June 1, 2020 | Same duties, same wages |
| C.V. | 59 | Jet Operator | June 8, 2020 | Same duties, same wages |
| D.C. | 65 | Ryobi Operator | No offer made | No offer made |
| L.A. (plaintiff) | 67 | Register Operator | December 2, 2020 | Different duties, lower wages |

Exhibit E (Doc. #53-6) at 5.

On January 5, 2021, defendant sent a letter to the EEOC responding to plaintiff's EEOC complaint. In this letter, defendant informed the EEOC that it had offered to rehire plaintiff in

8

December of 2020 and that she had declined the offer. The EEOC ultimately issued plaintiff a Notice of Right to Sue dated April 19, 2021. Exhibit 11 (Doc. #64-3) at 4.

Plaintiff commenced this action on June 4, 2021. Complaint (Doc. #1). Plaintiff claims that defendant discriminated her based on age when it (1) laid her off on April 13, 2020 and (2) offered to rehire her on December 2, 2020, months later than younger rehired employees, for a lower-skilled and lower-paid position. Plaintiff also claims that defendant retaliated against her for filing an EEOC complaint by offering to rehire her for a lower-skilled and lower-paid position.

**Analysis**

Defendant asserts that it is entitled to summary judgment on plaintiff's age discrimination claim because plaintiff cannot establish a prima facie case and has not presented evidence that defendant's legitimate, nondiscriminatory reasons were a pretext for discrimination. Defendant further argues that it is entitled to summary judgment on plaintiff's retaliation claim because plaintiff failed to exhaust administrative remedies.

**I.    Age Discrimination**

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on an ADEA claim, plaintiff must prove by a preponderance of the evidence—either directly or circumstantially—that age was the "but-for" cause of the termination. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177–78 (2009) (citation omitted). When plaintiff presents circumstantial evidence of discrimination, as is the case here, the McDonnell Douglas burden-shifting

9

framework applies. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see Tabor v. Hilti, 703 F.3d 1206, 1216 (10th Cir. 2013).

Under this framework, plaintiff has the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802; Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1105 (10th Cir. 2008) (quoting Sanchez v. Denver Pub. Sch., 164 F.3d 527, 531 (10th Cir. 1998)). To establish a prima facie case of discriminatory discharge under the ADEA, a plaintiff affected by a reduction in force ("RIF") must prove (1) that she is within the protected age group (over age 40); (2) that she was doing satisfactory work; (3) that she was discharged despite the adequacy of her work; and (4) that there is some evidence the employer intended to discriminate against her in reaching its RIF decision. Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998).

To establish the fourth element, plaintiff need not produce evidence that age was a determining factor in defendant's decision. Id. at 1167. Plaintiff can satisfy the fourth element with evidence that her "employer fired qualified older employees but retained younger ones in similar positions." Branson v. Price River Coal Co., 853 F.2d 768, 771 (10th Cir. 1988). Plaintiff must show that she is "similarly situated" to the younger employees in similar positions whom defendant treated more favorably. Long v. Owens Corning, 214 F. Supp. 2d 1124, 1129 (D. Kan. 2002). Employees are similarly situated when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline and have engaged in conduct of comparable seriousness. McGowan v. City of Eufala, 472 F.3d 736, 745 (10th Cir. 2006). In a RIF case, a plaintiff can establish the fourth element by "point[ing] to circumstances that show that the employer could have retained her, but chose instead to retain a younger employee." Id.

10

If plaintiff satisfies her burden, the burden of production shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action. McDonnell Douglas, 411 U.S. at 802–03; Sanders, 544 F.3d at 1105 (citing Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). If defendant does so, the burden shifts back to plaintiff to show a genuine issue of material fact whether defendant's stated reason is pretextual, i.e., unworthy of belief. Sanders, 544 F.3d at 1105. Plaintiff may show pretext in a RIF case by demonstrating that (1) her termination is inconsistent with defendant's RIF criteria; (2) defendant deliberately falsified or manipulated her evaluation under its RIF criteria; or (3) defendant's alleged RIF is a sham. See Beaird, 145 F.3d at 1168.

### A. Plaintiff's Layoff

#### i. Prima Facie Case

Plaintiff claims that defendant discriminated against her on the basis of age when it laid her off on April 13, 2020. Defendant does not contest that plaintiff meets the first three elements of her prima facie case but argues that she cannot meet the fourth element because plaintiff was a B Scale employee and was not similarly situated to C or D Scale employees with superior skill sets who could operate more machines than she could.

As stated above, plaintiff has presented evidence that she was a C Scale employee. Even if plaintiff were a B scale employee, however, Benham supervised plaintiff along with every other press operator. In other words, plaintiff dealt with the same supervisor as the other press operators. Defendant has not provided evidence that plaintiff was subject to different standards governing performance evaluation or discipline than C Scale employees. Even if plaintiff were a B scale employee, she has therefore raised a genuine issue of material fact whether she was

11

similarly situated to all other press operators at the Fort Scott plant. See McGowan, 472 F.3d at 745.

The hurdle for plaintiff to set forth a prima facie case is not high. Plaintiff has provided evidence that she was the oldest press worker at the Fort Scott plant and was between 11 and 24 years older than similarly situated C and D Scale press workers whom defendant retained. Further, it is uncontroverted that plaintiff was qualified to perform both Register Press and Bindery work, yet defendant laid plaintiff off while retaining five younger employees who were only qualified to perform Bindery work. She also performed work on the Nale Press machine, but defendant laid her off while retaining a 56-year-old Nale Operator. Plaintiff has therefore raised a genuine issue of material fact whether defendant could have retained her but chose instead to retain a younger employee. Beaird, 145 F.3d at 1167. For purposes of summary judgment, plaintiff has established a prima facie case.[4]

### ii. Pretext

Defendant argues that it had legitimate, nondiscriminatory reasons for laying plaintiff off. Defendant argues it laid plaintiff off because Allen intended to retain press workers who could operate multiple machines, but plaintiff could only operate the Register Press and higher-scale press operators could operate the Register Press in addition to more advanced press machines. By the same logic, defendant should have laid off an A Scale Bindery worker instead of plaintiff because plaintiff could perform her Register Press job duties as well as the duties of a Bindery worker. Also, it is undisputed that plaintiff did not "only" operate the Register Press; she

---

[4] Defendant argues that plaintiff has conceded that she was not a victim of age discrimination when defendant laid her off. In her deposition, plaintiff stated that on the day defendant laid her off, she did not believe that defendant had discriminated against her based on age. A valid age discrimination claim, however, does not require the plaintiff to be subjectively aware of discrimination at the exact moment when it happens. Plaintiff has not conceded her age discrimination claim on these grounds.

operated the Nale and Heidelberg Press machines in addition to regularly performing Bindery work. Defendant retained a 56-year-old Nale Operator while laying off plaintiff. Plaintiff has also raised a genuine issue of material fact whether she was a C Scale employee rather than a B Scale employee and whether defendant therefore misclassified her to justify laying her off on these grounds. See Beaird, 145 F.3d at 1168 (plaintiff may show pretext by demonstrating that defendant deliberately falsified or manipulated her evaluation under its RIF criteria).

Construed in the light most favorable to plaintiff, plaintiff has raised a genuine issue of material fact whether defendant's stated reasons for laying her off were pretexts for discrimination on the basis of age. The Court therefore overrules defendant's motion for summary judgment on this claim.[5]

### B. Defendant's Offer To Rehire Plaintiff

#### i. Prima Facie Case

Plaintiff claims that defendant discriminated against her on the basis of age when it offered to rehire her months later than younger rehired employees, for a lower-skilled job position and a lower wage. This claim, based on a rehiring initiative, is not a perfect match to the elements of a prima facie case of age discrimination based on a RIF. Neither party argues, however, that the Court should apply a different set of prima facie elements to this claim. As with the prior age discrimination claim, defendant only contests the last element of plaintiff's

---

[5] Plaintiff also argues that defendant's proffered reasons are unworthy of belief because it is "nonsensical to believe" that Allen would implement a RIF without first checking with defendant's corporate office, legal counsel or Human Resources and without preserving any documentation to memorialize the process of choosing which employees to lay off. Plaintiff's Suggestions In Opposition To Defendant's Motion For Summary Judgment (Doc. #62) filed July 29, 2022 at 42–43. However, "[t]he ADEA is not a vehicle for reviewing the propriety of business decisions." Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1426 (10th Cir. 1993). Evidence that defendant's RIF process may have been imprudent is not sufficient to show that defendant had an improper motive. Id.

prima facie case, arguing that plaintiff cannot show that it intended to discriminate against her in reaching its decision. For purposes of summary judgment, the Court will assume that plaintiff need only raise a genuine issue of material fact whether defendant intended to discriminate against her in reaching its decision to offer to rehire her.

Defendant argues that plaintiff cannot establish her prima facie case because plaintiff cannot demonstrate that it treated her less favorably than younger similarly situated employees. As explained above, plaintiff has raised a genuine issue of material fact whether she was similarly situated to other press workers whom defendant employed. Defendant laid off six press workers in addition to plaintiff. Defendant did not offer to rehire one of those press workers, who was 65 years old. The five other press workers were all at least seven years younger than plaintiff, and defendant offered to rehire all five of them at least six months before it offered to rehire plaintiff. Defendant recalled those five workers almost exactly in order[6] from youngest to oldest and offered them their original job positions for the same pay. Plaintiff was the only laid-off press worker whom defendant offered to rehire for a different job position or a lower wage. For summary judgment purposes, plaintiff has provided sufficient evidence to establish a genuine issue of material fact whether defendant intended to discriminate against her while reaching its decision to rehire her. Plaintiff has therefore established her prima facie case.

      **ii.**    **Pretext**

Defendant argues it had legitimate, nondiscriminatory reasons for offering to rehire plaintiff six months later than all other workers and for a lower-skilled, lower-paying position: defendant did not have enough orders on the Register Press to justify rehiring a Register Press

---

      [6]    Specifically, defendant offered to rehire press workers aged 47, 47, 55, 60, 59 and 67 (plaintiff), in that order.

Operator, but after six months it had a lower-paying Bindery job position for which plaintiff was qualified.

It is undisputed that plaintiff was not qualified to perform Jet, Rotary or Ryobi Press work, and that the press workers whom defendant rehired before plaintiff were all Jet, Rotary or Ryobi Press Operators. The record shows, however, that plaintiff also performed Nale and Heidelberg press work and that defendant rehired its workers almost exactly in order from youngest to oldest. Plaintiff has also raised a genuine issue of material fact whether defendant misclassified her as a B Scale worker rather than a C Scale worker to justify treating her differently from younger C Scale workers. While a close case, the Court construes the record in the light most favorable to plaintiff. Based on the totality of circumstances, plaintiff has raised a genuine issue of material fact whether defendant's stated reasons for offering to rehire her on December 2, 2020 were pretexts for discrimination on the basis of age. The Court therefore overrules defendant's motion for summary judgment on this claim.

## II. Retaliation

Plaintiff argues that defendant retaliated against her for filing a charge of discrimination with the EEOC by offering her a job position for less pay and fewer responsibilities than her pre-layoff position. Defendant argues that plaintiff never exhausted her retaliation claim.

The ADEA prohibits an employer from discriminating against an employee because he or she "has opposed any practice made unlawful" by the ADEA. 29 U.S.C. § 623(d). The burden-shifting framework of McDonnell Douglas applies to retaliation claims under the ADEA. See Lujan v. Walters, 813 F.2d 1051, 1058 (10th Cir. 1987).

### A. Administrative Exhaustion

Defendant argues that plaintiff did not exhaust administrative remedies on her retaliation claim. Plaintiff checked the box for "retaliation" when she filed her EEOC charge on or around October 30, 2020 but did not explain the basis for her retaliation claim at that time. In the EEOC charge, plaintiff (1) summarized her employment history at Ennis; (2) explained that Randall and Benham laid her off on April 13, 2020 and blamed the layoff on COVID-19; (3) alleged that defendant hired back only its younger laid-off employees; (4) stated that defendant replaced her with younger workers who had no Register Press experience; (5) stated that she received no termination paperwork and she "cannot discern any event or allegation during my career . . . which would subject me for termination;" and (6) concluded: "I believe I was discriminated based on my age in violation of the ADEA." Exhibit 5 (Doc. #62-5) at 3. Plaintiff therefore described facts solely related to her age discrimination claim.

Plaintiff does not allege that she engaged in any protected activity other than filing the EEOC charge itself, and the only act of retaliation occurred after she filed this EEOC charge, when defendant offered to rehire her on December 2, 2020 for a lower-skilled and lower-paying job. Plaintiff never supplemented the original EEOC charge. Her EEOC charge checked the box for "retaliation" but never explained the basis for any belief that defendant had retaliated against her.

The ADEA requires plaintiff to exhaust certain administrative remedies, beginning with filing a timely charge of discrimination with the EEOC, before filing suit. The ADEA provides that "[n]o civil action may be commenced by an individual under this section until . . . a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission" and that "[s]uch a charge shall be filed . . . within 180 days after the alleged

unlawful practice occurred." 29 U.S.C. § 626 (emphasis added). A claim is time-barred if it is not filed within these time limits. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). Plaintiff's EEOC charge must "describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). This requirement protects employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims. Foster v. Ruhrpumpen, Inc., 365 F.3d 1191, 1195 (10th Cir. 2004). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113. The charge therefore must be filed within the requisite time period "after the discrete discriminatory act occurred." Id. (emphasis added).

Here, plaintiff did not file a charge alleging retaliation after the retaliatory act occurred. Instead, she filed a charge alleging retaliation before any retaliatory act occurred. She could not "describe generally" the retaliatory action of which she complained because, at that time, defendant had not done anything retaliatory. Plaintiff also did not supplement her EEOC charge after the fact to allege that defendant retaliated against her by offering to rehire her in a lower-paying position.

Plaintiff argues she did not have to amend her EEOC charge to preserve her retaliation claim because her retaliation claim is reasonably related to the content of the EEOC charge. The Supreme Court has abrogated the "reasonably related" test for retaliation and discrimination claims, however, and holds that each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted. Morgan, 536 U.S. at 122. When defendant offered plaintiff a lower-paying job on December 2, 2020, this "start[ed] a new clock for filing charges" alleging retaliation by offering her a lower-paying job. Id. at 113. Plaintiff never filed those charges.

Plaintiff further argues that (1) the retaliatory conduct—the job offer—occurred only a month after she filed the EEOC charge and thus the EEOC's investigation of the charge would have uncovered the rehire offer, and (2) defendant informed the EEOC of its offer to rehire plaintiff when defendant wrote a letter to the EEOC on January 5, 2021, months before the EEOC issued its right to sue letter on April 19, 2021.  Thus, plaintiff argues that the EEOC had ample opportunity to investigate the rehire offer and that she did not need to amend her EEOC charge.  While the EEOC knew about defendant's rehire offer, plaintiff never informed the EEOC that she believed the rehire offer was retaliatory.  Aside from checking the box for retaliation, plaintiff never explained the basis for her alleged retaliation claim or mentioned her retaliation claim in her EEOC charge.  Neither the EEOC nor defendant were on notice that plaintiff considered the rehire offer to be retaliatory.  Plaintiff did not exhaust administrative remedies for her retaliation claim.  See Eisenhour v. Weber County, 744 F.3d 1220, 1226–1227 (10th Cir. 2014) (plaintiff failed to exhaust administrative remedies where alleged retaliation occurred post-EEOC complaint). The Court therefore grants defendant's motion for summary judgment against plaintiff's retaliation claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #52) filed June 30, 2022 is **SUSTAINED in part and OVERRULED in part.**

Dated this 30th day of November, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge